IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASD SPECIALTY HEALTHCARE, INC. d/b/a ONCOLOGY SUPPLY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MONTGOMERY AND ASSOCIATES, M.D., P.A., successor by name change to MONTGOMERY & WARMUTH, M.D., P.A., )<br>)<br>Defendant. ) | CIVIL ACTION NO. 1:06cv241-WHA |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, ASD Specialty Healthcare, Inc., d/b/a Oncology Supply ("ASD") hereby submits this memorandum of law in support of its motion for summary judgment on its Complaint against the defendant Montgomery & Associates, M.D., P.A., successor-by-name change to Montgomery & Warmuth, M.D., P.A. ("Montgomery").

**I. INTRODUCTION**

ASD brought suit against Montgomery to recover sums due from Montgomery pursuant to a contractual relationship whereby Montgomery ordered and received medical and pharmaceutical products from ASD. In response to Requests for Admissions served upon it, Montgomery has admitted that the products in question were ordered for its benefit, that ASD complied with its contractual obligations, and that Montgomery did not. Montgomery has also admitted that it owes ASD, as of March 2, 2006, the principal sum of $609,630.55, plus interest on each outstanding invoice at the annual rate of eighteen per cent (18%), and reasonable attorneys' fees. Accordingly, there is no dispute as to those material facts, and ASD is entitled,

as a matter of law, to judgment against Montgomery on Counts I through IV of ASD's Complaint.

## II. STATEMENT OF UNDISPUTED FACTS:

1. ASD is a supplier of medical and pharmaceutical products.

2. At all times relevant hereto, and as set forth more fully below, Montgomery (a) solicited business with, (b) negotiated with, (c) had products shipped by, (d) communicated with, (e) submitted documents to, and (f) contracted with ASD in Dothan, Alabama.

3. At various times and at Montgomery's request, ASD sold and delivered to Montgomery pharmaceutical and other products (the "Goods") on open account, and pursuant to written agreements (collectively, the "Agreements").

4. Despite demand, Montgomery failed to make payment for certain Goods that it purchased on credit.

5. As a result of Montgomery' defaults, all sums owed by it to ASD are immediately due and payable in full.

6. As of March 2, 2006, the total principal balance due to ASD from Montgomery equalled $609,630.55.

7. ASD has complied with its contractual obligations by supplying the Goods to Montgomery, and invoicing Montgomery for payment.

8. Despite the fact that ASD sent invoices to Montgomery and demanded payment for the Goods supplied, Montgomery failed to make payment to ASD in accordance with Montgomery's obligations.

9. Nor has Montgomery ever objected to the amounts shown on ASD's outstanding invoices.

10. On or about March 15, 2006, ASD filed a complaint (the "Complaint") against Montgomery.

11. The Complaint asserted causes of action for Breach of Contract (Count I), Breach of Account Stated (Count II), Claim for Open Book Account (Count III), and Unjust Enrichment (Count IV). A true and correct copy of the Complaint is attached hereto, incorporated herein, and marked as Exhibit "1."

12. On or about April 10, 2006, Montgomery filed an answer to the Complaint.

13. In June, 2006, ASD served discovery requests, including Requests for Admissions ("Requests") upon Montgomery. A true and correct copy of the Requests is attached hereto as Exhibit "2."

14. On August 7, 2006, Montgomery served upon counsel for ASD its Responses to Requests for Admission (the "Admissions Responses"). A true and correct copy of the Admissions Responses is attached hereto, incorporated herein, and marked as Exhibit "3."

15. In response to ASD's Requests, Montgomery answered certain of the Requests as follows:

> **REQUEST FOR ADMISSION NO.1**
>
> Admit that, beginning in 1999, Montgomery ordered and received from ASD medical and pharmaceutical products on an ongoing basis.
>
> *Request for Admission No. 1 is admitted.*

(Ex. "2" p. 6; Ex. "3" p. 1.)

> **REQUEST FOR ADMISSION NO. 2**
>
> Admit that Montgomery & Associates, M.D., P.A., is the successor-by-name-change to Montgomery & Warmuth, M.D., P.A.

>   *Request for Admission No. 2 is admitted.*

(Ex. "2" p. 6; Ex. "3" p. 1.)

>   ### REQUEST FOR ADMISSION NO. 3
>
>   Admit that, as of March 2, 2006, the total principal balance due to ASD from Montgomery for goods shipped to or for the benefit of Montgomery was $609,630.55.
>
>   *Request for Admission No. 3 is admitted.*

(Ex. "2" p. 6; Ex. "3" p. 1.)

>   ### REQUEST FOR ADMISSION NO. 4
>
>   Admit that ASD is entitled to charge interest at the contractual rate of eighteen percent (18%) per annum on each outstanding invoice unpaid by Montgomery.
>
>   *Request for Admission No. 4 is admitted.*

(Ex. "2" p. 6; Ex. "3" p. 2.)

>   ### REQUEST FOR ADMISSION NO. 5
>
>   Admit that attached as Exhibit "A" hereto is a true and correct itemization of all sums due and owing from Montgomery to ASD on account of goods shipped to or for the benefit of Montgomery, and an accurate list of outstanding invoices addressed to Montgomery.
>
>   *Request for Admission No. 5 is admitted.*

(Ex. "2" p. 6-7; Ex. "3" p. 2.)

>   ### REQUEST FOR ADMISSION NO. 6
>
>   Admit that attached hereto as Exhibit "B" is a true and correct copy of a credit application executed by Montgomery.
>
>   *Request for Admission No. 6 is admitted.*

(Ex. "2" p. 7; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 7

Admit that Montgomery has not paid any of the invoices listed on Exhibit "A."

> *Request for Admission No. 7 is denied to the extent that Exhibit "A" reflects payments on certain invoices; otherwise the request is admitted.*

(Ex. "2" p. 7; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 8

Admit that no other person has paid any of the invoices listed on Exhibit "A."

> *Request for Admission No. 8 is admitted with the qualification that certain payments have been made on certain invoices as reflected in Exhibit "A."*

(Ex. "2" p. 7; Ex. "3" p. 8.)

### REQUEST FOR ADMISSION NO. 9

Admit that ASD invoiced Montgomery for medical and pharmaceutical supplies.

> *Request for Admission No. 9 is admitted.*

(Ex. "2" p. 7; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 10

Admit that Montgomery has never objected to the amounts set forth in any of ASD's invoices.

> *Request for Admission No. 10 is admitted.*

(Ex. "2" p. 7; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 11

Admit that at all times relevant hereto, and as set forth more fully below, Montgomery solicited business with ASD in Dothan, Alabama.

> *Request for Admission No. 11 is admitted with the qualification that the solicitation of business occurred by*

5

> *phone, fax, letter, or email communications from the defendant while in St. Augustine, Florida to the plaintiff while in Dothan Alabama.*

(Ex. "2" p. 8; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 12

Admit that at all times relevant hereto, and as set forth more fully below, Montgomery negotiated with ASD in Dothan, Alabama.

> *Request for Admission No. 12 is admitted with the qualification that the negotiation of business occurred by phone, fax, letter, or email communications from the defendant while in St. Augustine, Florida to the plaintiff while in Dothan Alabama.*

(Ex. "2" p. 8; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 13

Admit that at all times relevant hereto, and as set forth more fully below, Montgomery had products shipped by ASD in Dothan, Alabama.

> *Request for Admission No. 13 is admitted.*

(Ex. "2" p. 13; Ex. "3" p. 2.)

### REQUEST FOR ADMISSION NO. 14

Admit that at all times relevant hereto, and as set forth more fully below, Montgomery communicated with ASD in Dothan, Alabama.

> *Request for Admission No. 14 is admitted with the qualification that the communications occurred by phone, fax, letter, or email from the defendant while in St. Augustine, Florida to the plaintiff while in Dothan Alabama.*

(Ex. "2" p. 8; Ex. "3" p. 2-3.)

### REQUEST FOR ADMISSION NO. 15

Admit that at all times relevant hereto, and as set forth more fully below, Montgomery submitted documents to ASD in Dothan, Alabama.

6

> *Request for Admission No. 15 is admitted with the qualification that the documents submitted by the defendant were submitted while the defendant was in St. Augustine, Florida and sent to the plaintiff in Dothan Alabama.*

(Ex. "2" p. 8; Ex. "3" p. 3.)

### REQUEST FOR ADMISSION NO. 16

Admit that at all times relevant hereto, and as set forth more fully below, Montgomery contracted with ASD in Dothan, Alabama.

> *Request for Admission No. 16 is denied to the extent that the term "contracted" is ambiguous and that the parties did not execute a written contract. The defendant, however, admits to having submitted a completed credit application from St. Augustine, Florida to the plaintiff in Dothan, Alabama. See Exhibit "B" to the Plaintiff's Requests for Admissions.*

(Ex. "2" p. 8-9; Ex. "3" p. 3.)

### REQUEST FOR ADMISSION NO. 17

Admit that at various times and at Montgomery's request, ASD sold and delivered to Montgomery pharmaceutical and other products (the "Goods") on open account, and pursuant to written agreements (collectively, the "Agreements").

> *Request for Admission No. 17 is denied to the extent that there were no written agreements, rather there was a completed credit application that was approved by the plaintiff. See Exhibit "B" to the Plaintiff's Requests for Admissions. In all other respects, the request for admission is admitted.*

(Ex. "2" p. 9; Ex. "3" p. 3.)

### REQUEST FOR ADMISSION NO. 18

Admit that despite demand, Montgomery failed to make payment for certain Goods that it purchased on credit.

> *Request for Admission No. 18 is admitted.*

(Ex. "2" p. 9; Ex. "3" p. 3.)

### REQUEST FOR ADMISSION NO. 19

Admit that ASD has complied with its contractual obligations by supplying the Goods to Montgomery, and invoicing Montgomery for payment.

*Request for Admission No. 19 is denied to the extent that the parties did not execute a written contract. The defendant, however, admits that the plaintiff has complied fully with the parties' understanding that the plaintiff would supply goods to the defendant and would invoice the defendant for payment.*

(Ex. "2" p. 9; Ex. "3" p. 3.)

### REQUEST FOR ADMISSION NO. 21

Admit that beginning in 1999, ASD had an ongoing business relationship with Montgomery pursuant to which ASD sold Goods to Montgomery, and Montgomery paid for such Goods in accordance with the terms of various statements of account sent from ASD to Montgomery.

*Request for Admission No. 21 is admitted.*

(Ex. "2" pp. 9-10; Ex. "3" p. 4.)

### REQUEST FOR ADMISSION NO. 22

Admit that ASD invoiced Montgomery in a timely fashion for the Goods.

*Request for Admission No. 22 is admitted.*

(Ex. "2" p. 10; Ex. "3" p. 4.)

### REQUEST FOR ADMISSION NO. 23

Admit that the invoices sent to Montgomery by ASD contain a description of the Goods, as well as the date of their sale and the relevant price.

*Request for Admission No. 23 is admitted.*

(Ex. "2" p. 10; Ex. "3" p. 4.)

**REQUEST FOR ADMISSION NO. 24**

Admit that Montgomery had an opportunity to review the relevant invoices and raise any objections regarding the accuracy of the information contained therein including, among other things, the amount stated as due.

*Request for Admission No. 24 is admitted.*

( Ex. "2" p. 10; Ex. "3" p. 4.)

16. Accordingly, the foregoing facts are now "conclusively established" under Federal Rule of Civil Procedure 36(b).

### III. ARGUMENT

**A.    Legal Standards**

Rule 56(c) of the Federal Rules of Civil Procedure provides that district courts shall enter summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment presents courts with "an opportunity to dispose of meritless cases and avoid wasteful trials," Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996), and is "an integral part of the Federal Rules" that "must be construed with due regard . . . for the rights of persons opposing [ ] claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The party opposing summary judgment cannot rest merely upon "bare assertions, conclusory allegations, or suspicions." Kelly v. Drexel Univ., 907 F. Supp. 864, 870 (E.D. Pa. 1995), aff'd, 94 F.3d 102 (3d Cir. 1996). Rather, he or she must produce evidence that corroborates the adverse allegations and demonstrates a real factual dispute about a material

9

issue that can be resolved only by a trial. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Thomas v. Brown, 969 F.Supp. 956, 958-59 (E.D. Pa. 1997). To survive a summary judgment motion, the non-moving party must raise "more than a mere scintilla of evidence in its favor." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). The evidence produced must be sufficient for a jury to return a verdict in the non-moving party's favor. Anderson, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

In this case, because there are no genuine disputes about any material fact concerning Montgomery's acknowledged failure to pay ASD despite being invoiced, or the outstanding indebtedness, the Court should enter summary judgment in favor of ASD on Counts I through IV of ASD's Complaint.

      **B.**    **It is Conclusively Established That Montgomery Is Liable to ASD as Claimed In ASD's Complaint**

Federal Rule of Civil Procedure 36 ("Rule 36") provides that a party may serve upon any other party "a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope [of the discovery rules]." Fed. R. Civ. P. 36(a). Rule 36(b) states, in relevant part, as follows:

> Any matter admitted under this rule is ***conclusively established*** unless the court on motion permits withdrawal or amendment of the admission.

Fed. R. Civ. P. 36(b) (emphasis added).

Accordingly, it is "conclusively established" for the purposes of this action that:

10

(a) beginning in 1999, Montgomery ordered and received from ASD medical, pharmaceutical and other products on an ongoing basis, (Ex. "2" p. 6 RFA 1; Ex. "3" p. 1 Resp. 1);

(b) as of March 2, 2006, the total principal balance due to ASD from Montgomery for goods shipped to or for its benefit was $609,630.55, (Ex. "2" p. 6 RFA 3; Ex. "3" p. 1 Resp. 3);

(c) ASD complied with its obligations to Montgomery, but Montgomery breached the terms of the agreement between it and ASD by failing to pay ASD, (Ex. "2" p. 8-9 RFAs 16-19; Ex. "3" p. 3 Resps. 16-19); and

(d) the summary attached as Exhibit "A" to the Admissions Requests showing the outstanding principal balance owed to ASD as being $609,630.55 accurately reflects the outstanding principal balance owed by Montgomery to ASD as of March 2, 2006, (Ex. "2", pp. 6-7, RFA 5; Ex. "3", p. 2, Resp. 5).

## C.     ASD Is Entitled to Judgment In Its Favor On Count I of ASD's Complaint

In Count I of its Complaint, ASD alleged that Montgomery is liable to ASD for breaching the terms of the contract between it and ASD, and that ASD is owed an amount in excess of $609,630.55 as a result of this breach. (Ex. "1" ¶¶ 13-16.) No genuine issues of fact are involved in ASD's breach of contract claim against Montgomery.

Under Alabama law, a plaintiff asserting a cause of action for breach of contract must prove the existence of a valid contract to which plaintiff and defendant were parties, the plaintiff's performance under the contract, the defendant's breach of the duty imposed by the contract and the resultant harm to the plaintiff. See, e.g., Anderson v. Amberson, 905 So. 2d 811, 819 (Ala. Civ. App. 2004) (citing Shelton v. Clements, 834 So. 2d 775, 782 (Ala. Civ. App. 2002)).

Montgomery has admitted that it ordered and received from ASD medical, pharmaceutical and other products on an ongoing basis, that it had an agreement and ongoing business relationship with ASD whereby ASD would sell and deliver Goods to Montgomery and invoice Montgomery for payment, that ASD performed under the agreement by shipping the Goods to Montgomery, that Montgomery did not pay for the Goods, that ASD was owed, as of March 2, 2006, the total principal balance of $609,630.55, and that ASD is entitled to charge interest at the contractual rate of eighteen per cent (18%) per annum on each outstanding invoice. (Ex. "2" pp. 6-10 RFAs 1, 3, 4, 5, 11, 13, 18, 19, and 21, and attached Exs. "A" and "B"; Ex. "3" pp. 1-4, Resps. 1, 3, 4, 5, 11, 13, 18, 19, and 21.)  There is therefore no genuine issue as to the material facts that an agreement existed between ASD and Montgomery, that ASD complied with its obligations by shipping products to Montgomery, that Montgomery breached the terms of the agreement, and that ASD is owed the principal amount of $609,630.55, plus interest at the annual rate of eighteen per cent (18%) on each outstanding invoice.  Accordingly, ASD is entitled to judgment, as a matter of law, in its favor on Count I of its Complaint.[1]

### D.     ASD Is Entitled to Judgment On Counts II and III of Its Complaint

By acknowledging that it received products from ASD on an ongoing basis, and that Montgomery failed to pay for those products, Montgomery has admitted the elements necessary

---

[1] Montgomery apparently believes there was no written contract between the parties. Initially, this is incorrect. The Credit Application, which Montgomery admits signing, is a written contract that states, explicitly: "Creditor is hereby authorized to deliver goods or perform services for the following at my (our) request and charge same to my (our) account." Requests at Exhibit "B." The Credit Application also authorizes a finance charge equal to eighteen per cent (18%) per annum and payment of a reasonable attorney's fee.  More to the point, however, even Montgomery admits that "ASD had an ongoing business relationship with Montgomery pursuant to which ASD sold Goods to Montgomery and Montgomery paid for such Good in accordance with the terms of various statements of account sent from ASD to Montgomery." (Ex. "2" pp. 9-10 RFA 21; Ex. "3" p. 4 Resp. 21.)  At the very least therefore, ASD and Montgomery had an oral contract and course of dealing with definite terms that are agreed to.

12

for ASD to prevail on its Account Stated Claim (Count II) and Open Book Account (Count III) Claims of its Complaint. Additionally, Montgomery admits that it never objected to invoices delivered to it by ASD. (Ex. "2" p. 7 RFA 10; Ex. "3" p. 2 Resp. 10.) There is therefore no issue of material fact to prevent summary judgment on those two counts of the Complaint. See e.g. Wilhite v. Beasley, 497 So. 2d 103 (S. Ct. Ala. 1986); Plymel v. B.W. Projects, Inc., 632 So. 2d 453 (S. Ct. Ala. 1993).

### E.     ASD Is Entitled to Judgment In Its Favor On Count IV of ASD's Complaint

Similarly, even if this Court finds that there was no contract between the parties (which ASD respectfully submits is not the case), ASD would be entitled to a judgment against Montgomery under the alternative theory of unjust enrichment.

Under Alabama law, the elements to be proven for unjust enrichment are: (1) a benefit is conferred on defendant by plaintiff; (2) appreciation of such benefit by defendant; and (3) acceptance and retention of such benefit under such circumstances that it be inequitable for defendant to retain the benefits without payment of value. See, e.g., American Family Care, Inc. v. Fox, 642 So. 2d 486, 488 (1994); G.S. Gothard & Son Contractors, Inc. v. Mansel, 611 So. 2d 1101, 1103 (1992).

By conceding that it received Goods from ASD, that it has not paid for those Goods, and the value of those Goods, Montgomery has admitted that it has been enriched at ASD's expense in the principal amount of $609,630.55. Thus, Montgomery had a benefit conferred on it by ASD to the tune of $609,630.55 to which Montgomery was not entitled without payment. Moreover, because Montgomery never had any right to take and retain the Goods for its own use, it would be inequitable and unjust to allow Montgomery to have use of the Goods without paying ASD fair value. For these reasons, there is no genuine issue of material fact that ASD is entitled to judgment, as a matter of law, against Montgomery on Count IV of ASD's Complaint.

### F.  ASD Is Entitled to Collect Interest and Attorney's Fees

Under the terms of the Credit Application Montgomery admits signing, and the Admissions Responses, ASD is entitled to an award of interest at the annual rate of eighteen per cent (18%) on each outstanding invoice and its attorneys' fees.  (Ex. "2" p. 6 RFA 3, and attached Ex. "B"; Ex. "3" p. 1 Resp. 3.)  Accordingly, ASD is entitled to an award of interest at the annual rate of eighteen percent (18%) (or $300.64 per day[2]) on the entire principal owed, $609,630.55, from December 1, 2005, the date on which the last outstanding invoice became past due,[3] until the date of payment of the judgment, and its reasonable attorney's fees.

### G.  There Is No Question of Material Fact That Montgomery Is Subject To Personal Jurisdiction In This District

In its Answer, Montgomery asserted as its First Affirmative Defense that "[t]his Court lacks jurisdiction over the person of the Defendant."  In the Admissions Responses, however, Montgomery admitted that it solicited Goods from ASD, negotiated with ASD, communicated with ASD, and submitted a credit application to ASD.  (Ex. "2" pp. 8-9 RFAs 11-16; Ex. "3" pp. 2-3 Resps. 11-16.)  Montgomery also admits that it performed all these acts through telephone, fax, letter or email directed to ASD in Dothan, Alabama, and that the Goods were shipped from Dothan, Alabama.  (Id.)

It is established that:

> In order to determine whether personal jurisdiction exists, a federal court sitting in diversity must initially look at the state long-arm statute, and then at federal due process requirements.

---

[2] This amount is calculated according to the following formula:

$$\frac{0.18 \times \$609,630.55}{365 \text{ days}} = \$300.64 \text{ per day}$$

[3] As of December 1, 2005, all invoices upon which ASD bases its claim in this action were past due.

Cordell v. Greene Finance Co. of Georgetown, Georgia, 892 F. Supp. 1396, 1398 (M.D. Ala. 1995).

Alabama's long-arm statute permits personal jurisdiction over non-residents "when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States" Ala. R. Civ. P. 4.2(b). Because Alabama's long-arm statute is co-existent with federal law, this Court need only examine the requirements of the United States Constitution. Rather, the Court must simply "ask whether the exercise of jurisdiction over the nonresident defendants comports with due process." Cordell, 892 F. Supp. at 1399. See also, The Homebingo Network, Inc. v. Chayevsky, 428 F. Supp. 2d 1232, 1242 (S..D. Ala. 2006).

> It is well-settled that:
>
>> A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state. Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution…
>>
>> The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some minimum contacts with that state and the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice…
>>
>> The nonresident defendant's contacts with the forum must be such that he has fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign. A person has fair warning if he purposefully directs his activities at the forum, and claims of injury result from these activities… The exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice because his conduct and connection with the forum are such that he should reasonably anticipated being haled into court there… The Supreme Court has made very clear that:
>>
>>> "[i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting

>activities within the forum State, thus invoking the benefits and protections of its laws."

Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc., 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citations omitted).

Additionally:

>Sporadic forum activity, even a single act, may suffice as minimum contact under certain circumstances to render the out-of-state defendant subject to personal jurisdiction upon claims arising out of that activity…
>
>This specific jurisdiction is appropriate only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action…
>
>According to the Supreme Court, when a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign…
>
>This fair warning requirement is satisfied if the defendant has purposefully directed his activities at the forum and, the litigation results from alleged injuries that arise out of or relate to those activities…
>
>Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being hailed into court there…

Brown v. Astron Enterprises, Inc., 989 F. Supp. 1399, 1404 (N.D. Ala. 1997) (citations omitted).

Finally:

>Jurisdiction…may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, *it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the*

> *notion that an absence of physical contacts can defeat personal jurisdiction there.*

<u>Wenger Tree Service v. Royal Truck & Equipment, Inc.</u>, 853 S. 2d 888, 895-96 (Ala. 2002) (emphasis in original) (citations omitted).

In this case, Montgomery has acknowledged that it ordered the Goods from an Alabama resident, that it delivered documents to Alabama, corresponded with ASD located in Alabama, communicated with ASD located in Alabama, and had Goods shipped from Alabama. (Ex. "2" pp. 8-9 RFAs 11-16; Ex. "3" pp. 2-3 Resps. 11-16.) It is therefore beyond dispute that Montgomery could reasonably expect that its failure to pay ASD would cause economic harm in the State of Alabama. Furthermore, Montgomery's above-referenced acts are precisely the ones that gave rise to ASD's filing of this lawsuit in Alabama. This is sufficient to exercise specific personal jurisdiction. <u>See</u> <u>e.g</u>. <u>Duke v. Young</u>, 496 So. 2d 37, 39 (Ala. 1986) ("[t]he fundamental question [in determining whether the exercise of personal jurisdiction is appropriate] is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?"); <u>Baker v. Bennett</u>, 603 So. 2d 928, 934 (Ala. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 912 (1993)[4] ("[t]he primary inquiry regarding personal jurisdiction is whether a defendant could reasonably have anticipated that the effects of his acts would be felt by the plaintiff in Alabama.").

Additionally, in the Credit Application that Montgomery admits signing, Montgomery specifically "consent[s] and agree[s] to the jurisdiction and laws of the State of Alabama." (Ex. "2" at attached Exhibit "B".) Based upon the Admissions Responses and the unequivocal language of the Credit Application, Montgomery could be under no illusion but that its conduct would have effects in the State of Alabama.

---

[4] Overruled on other grounds, <u>State Farm Fire and Cas. Co.</u>, 729 So. 2d 834 (1998).

Accordingly, there is no question that, as a matter of law, this Court may exercise personal jurisdiction over Montgomery.[5]

### IV. CONCLUSION

For all the foregoing reasons, the Motion should be granted and the attached proposed order should be entered.[6]

Respectfully submitted,

/s/ Heath A. Fite
Heath A. Fite (FIT011)

An Attorney for Plaintiff
ASD SPECIALTY HEALTHCARE, INC.

---

[5] For similar reasons, and based on the same acknowledged acts of Montgomery, venue is proper in this judicial district. 28 U.S.C. § 1391.

[6] Throughout this brief, ASD relies on several documents that are attached hereto as exhibits. Under Fed. R. Civ. P. 56, a court ruling on a summary judgment motion may only consider information offered through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and thus, documentary evidence that is relied upon in moving for a summary judgment must be "sworn or certified" as authentic in an affidavit, answer to interrogatory, deposition or admission before it can be considered by the Court. Fed. R. Civ. P. 56(e); Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990) ("It is well-established that unauthenticated documents cannot be considered on a motion for summary judgment."); 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2722 at 383. The documents that ASD relies on herein are authenticated as follows:

Ex. "1" is a pleading filed as a public record in this Court under F.R.E. 901(b)(7).
Ex. "2" is a set of Requests for Admissions.
Ex. "3" is a copy of answers to admissions.

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3100
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 4th day of October, 2006:

Charles L. Truncale, Esquire
Law Office of Charles L. Truncale, LLC
1510 North Ponce de Leon Blvd. Suite B
St. Augustine, FL 32084

/s/ Heath A. Fite
Of Counsel